UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BERTRAM A. YOUNG** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-3542** |
| **WARDEN JEFFERY TRAVIS** | **SECTION "B"(4)** |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

**I.   Factual and Procedural Background**

The petitioner, Bertram A. Young ("Young"), is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[2] On April 12, 2000, Young was charged

---

[1] Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 1.

by bill of information in St. Tammany Parish with two counts of distribution of cocaine on July 21, 1999, and February 25, 2000.[3]

The record reflects that, on July 20, 1999, Raymond Smith, a paid confidential informant for the Drug Enforcement Administration ("DEA"), advised his supervisor, Skip Sewell, that he could make a controlled purchase of drugs from an Chris Guyot.[4] Smith set up the buy at a tire shop in Slidell, Louisiana, and he was accompanied to that location by an undercover agent, Detective Kevin Honore.

At around 5:30 p.m., two men arrived at the tire shop in a white Toyota sedan. One of the men exited the car and approached the car where Smith and Honore were waiting. The man told Smith that "Bullet" wanted to see him. Smith walked to the automobile bay of the shop and purchased three ounces of cocaine from a man identified later as Bertram Young. Honore had given Smith the money for the purchase. Honore saw the transaction take place. Smith returned to the car and handed the cocaine to Honore. Smith and Honore would later pick Young out of a photographic line-up in March 2000. Honore and another surveillance officer, Agent John Scanlan, also identified Young at trial as the man who made this sale.

After further investigation, on February 23, 2000, a confidential informant, Broderick Hogan, contacted Dwight Guyot about a possible drug transaction. The conversation was recorded. On February 25, 2000, Hogan went to Dwight Guyot's home equipped with a body wire. Guyot told

---

[3]St. Rec. Vol. 1 of 12, Bill of Information, 4/12/00.

[4]These facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. St. Rec. Vol. 12 of 12, 1st Cir. Opinion, 2002-KA-2080, pp. 3-6, 5/9/03; *State v. Young*, 844 So. 2d 424 (La. Ct. App. 2003) (Table).

him to return later for the drugs. He returned, still wired, and had another conversation with Guyot. Guyot told Hogan that he had to get the drugs for the sale from his uncle, Bertram Young.

On his third trip to Guyot's house that day, Hogan saw Guyot, his wife, and Young in the front yard. Young tossed a blue Wal-Mart bag to Guyot. Inside the house, Guyot took drugs out of the bag and sold them to Hogan. Although Young was not in the room, Hogan testified at trial that the drugs were from the same bag that Young threw to Guyot in the yard. After the purchase, Hogan gave the drugs, still in the Wal-Mart bag, to DEA officers.

Young presented his own and other witness testimony at trial seeking to establish that he was attending a softball game at the time of the July 21, 1999, transaction. He conceded at trial, however, that the tire shop was on the way to the ballpark.

Young was first called before a jury for trial on April 17 and 18, 2001.[5] After the State encountered evidence problems, the Trial Court granted a mistrial.[6] The Trial Court recalled the matter for jury trial on August 27, 2001.[7] The next day, after the jury had been selected but not sworn, the Trial Court determined that it needed to conduct a hearing on the admissibility of certain evidence before proceeding to trial.[8] The Trial Court dismissed the jury and proceeded with its motion to suppress hearing.[9]

---

[5] St. Rec. Vol. 1 of 12, Trial Minutes, 4/17/01; Trial Minutes, 4/18/01; Trial Transcript, 4/17/01; St. Rec. Vol. 2 of 12, Trial Transcript (continued), 11/17/01; Trial Transcript, 11/18/01.

[6] St. Rec. Vol. 1 of 12, Trial Minutes, 4/18/01; St. Rec. Vol. 2 of 12, Trial Transcript, 11/18/01.

[7] St. Rec. Vol. 1 of 12, Trial Minutes, 8/27/01; St. Rec. Vol. 2 of 12, Trial Transcript, 8/27/01; St. Rec. Vol. 3 of 4, Trial Transcript (continued), 8/27/01.

[8] St. Rec. Vol. 1 of 12, Trial Minutes, 8/28/01; St. Rec. Vol. 3 of 12, Trial Transcript, 8/28/01; St. Rec. Vol. 4 of 12, Trial Transcript (continued), 8/28/01.

[9] *Id.*; St. Rec. Vol. 3 of 12, Trial Transcript, 8/28/01; St. Rec. Vol. 4 of 12, Trial Transcript (continued), 8/28/01.

On November 13, 2001, the Trial Court again called the matter for jury trial.[10] Prior to the start of trial, the Court denied the motion to suppress.[11] The Court proceeded with jury selection and Young was tried before that jury on November 13 through 17, 2001.[12] He was found guilty as charged on both counts.[13]

The Trial Court denied Young's motions for new trial and for post-verdict judgment of acquittal on December 7, 2001.[14] After waiver of legal delays, the Trial Court sentenced Young that same day to serve consecutive sentences of 15 years on each count, with the first five years to run without benefit of parole.[15] The State also filed a multiple offender bill.[16]

On January 4, 2002, the Trial Court adjudicated Young to be a multiple offender and resentenced him on Count One to serve 30 years as a multiple offender with the first five years to be without benefit of parole.[17]

---

[10] St. Rec. Vol. 1 of 12, Trial Minutes, 11/13/01; St. Rec. Vol. 4 of 12, Trial Transcript, 11/13/01.

[11] *Id.*; St. Rec. Vol. 4 of 12, Trial Transcript, 11/13/01.

[12] *Id.*; St. Rec. Vol. 1 of 12, Trial Minutes, 11/14/01; Trial Minutes, 11/15/01; Trial Minutes, 11/16/01; Trial Minutes, 11/17/01; St. Rec. Vol. 4 of 12, Trial Transcript, 11/13/01; St. Rec. Vol. 5 of 12, Trial Transcript (continued), 11/13/01; St. Rec. Vol. 5 of 12, Trial Transcript, 11/14/01; St. Rec. Vol. 6 of 12, Trial Transcript (continued), 11/14/01; St. Rec. Vol. 6 of 12, Trial Transcript, 11/15/01; St. Rec. Vol. 7 of 12, Trial Transcript (continued), 11/15/01; St. Rec. Vol. 8 of 12, Trial Transcript (continued), 11/15/01; St. Rec. Vol. 8 of 12, Trial Transcript, 11/16/01; St. Rec. Vol. 9 of 12, Trial Transcript (continued), 11/16/01; St. Rec. Vol. 9 of 12, Trial Transcript, 11/17/01.

[13] St. Rec. Vol. 1 of 12, Trial Minutes, 11/17/01; Verdict Form, 11/17/01.

[14] St. Rec. Vol. 1 of 12, Sentencing Minutes, 12/7/01; Motion for New Trial, 12/7/01; Motion for Judgment of Acquittal, 12/7/01; St. Rec. Vol. 9 of 12, Sentencing Transcript, 12/7/01.

[15] *Id.*

[16] St. Rec. Vol. 1 of 12, Multiple Bill, 12/7/01.

[17] St. Rec. Vol. 1 of 12, Multiple Bill Hearing Minutes, 1/4/02; St. Rec. Vol. 9 of 12, Multiple Bill Hearing Transcript, 1/4/02.

On direct appeal to the Louisiana First Circuit Court of Appeal, Young's counsel raised seven grounds for relief:[18] (1) insufficient evidence; (2) the Trial Court erred in denying the motions for new trial and for post-verdict judgment of acquittal based on insufficient evidence; (3) the Trial Court erred in overruling Young's *Batson*[19] challenge; (4) the Trial Court erred in overruling Young's challenges for cause; (5) the Trial Court erred in admitting unauthenticated hearsay evidence, the tapes and audiotapes, at trial; (6) the Trial Court erred in imposing an excessive sentence based on insufficient evidence at the multiple bill hearing; and (7) the Trial Court violated Young's right to a jury trial by conducting the trial before a jury different from the jury originally selected on August 27 and 28, 2001.

The Louisiana First Circuit affirmed his convictions and sentences after finding each of his claims to be meritless and unsupported by the record. The Court also determined that his excessive sentence claim was barred from appellate review for lack of a contemporaneous objection pursuant to La. Code Crim. P. art. 881.1(D) and *State v. Duncan*, 667 So. 2d 1141, 1143 (La. Ct. App. 1995).

The Louisiana Supreme Court denied Young's subsequent writ application without reasons on December 19, 2003.[20] Young's conviction became final 90 days later, on March 18, 2004, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court

---

[18]St. Rec. Vol. 12 of 12, 1st Cir. Opinion, 2002-KA-2080, pp. 3-6, 5/9/03; Appeal Brief, 2002-KA-2080, 11/6/02; Supplemental Appeal Brief, 2002-KA-2080, 12/27/02.

[19]*Batson v. Kentucky*, 476 U.S. 79 (1986). In *Batson*, the United States Supreme Court held that peremptory challenges could not be used to exclude jurors solely because of race unless a neutral reason for the peremptory challenge could be shown.

[20]*State v. Young*, 861 So. 2d 556 (La. 2003); St. Rec. Vol. 12 of 12, La. S. Ct. Order, 2003-KO-1699, 12/19/03; La. S. Ct. Letter, 6/13/03 (postal metered 5/30/03). The record does not contain a copy of this writ application.

is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On October 13, 2004, Young submitted an application for post-conviction relief to the Trial Court raising five grounds for relief:[21] (1) the State engaged in prosecutorial misconduct when it hired a co-defendant to obtain privileged defense strategy in violation of the Sixth Amendment; (2)(a) there was no probable cause for the initial arrest in the arrest warrant affidavit, and (b) the information in the arrest warrant affidavit was obtained without *Miranda* warnings; (3) the State withheld evidence of the surveillance tape and the supplemental report, which were not provided in pretrial discovery; (4) the Trial Court erred and violated the confrontation clause in precluding alibi witness testimony at trial; and (5) counsel was ineffective for failure to investigate, failure to call alibi witnesses, and for refusing to put Young on the stand to testify in support of the alibi defense.

On February 10, 2005, the Trial Court signed a judgment, which was filed on March 10, 2005, denying Young's application.[22] The Court held that all of the claims were impermissibly repetitive because they were or should have been previously presented to the courts or on appeal. The Court also determined that his claims one, three, four, and five were without merit and not supported by the record. The Court also held that the second claim was not preserved for review because there was no pretrial motion to quash or to suppress on these issues.

---

[21]St. Rec. Vol. 12 of 12, Uniform Application for Post-Conviction Relief, 10/18/04 (signed 10/13/04).

[22]St. Rec. Vol. 12 of 12, Judgment with Reasons, 3/10/05 (signed 2/10/05); Clerk's Letter, 3/15/05.

On June 27, 2005, the Louisiana First Circuit denied Young's subsequent writ application on the showing made, noting that he failed to include copies of the necessary pleadings to support his claims.[23]

Young also submitted a writ application to the Louisiana Supreme Court on July 13, 2005, in which he raised the same five post-conviction claims previously presented to the Trial Court.[24] He supplemented that writ application on March 9, 2006, raising six claims, four of which had not been previously raised:[25] (1) the State violated the sequestration order where the State, a DEA agent, and a confidential informant had lunch together just prior to the informant's testimony; (2) the State manipulated and influenced the confidential informant's testimony; (3) the alibi evidence presented at trial contradicted the State's theory of the case and the verdict; and (4) the Trial Court violated Young's rights when the court failed to take action after being advised the State's witness, Detective John Scanlon, met with a juror during a lunch break. The Louisiana Supreme Court denied Young's application without reasons on April 20, 2007.[26]

## II.    Federal Petition

On June 29, 2007, the Clerk of this Court filed Young's petition for federal habeas corpus relief.[27] Although his numbering system and presentation of the claims is unorthodox, under a broad

---

[23] St. Rec. Vol. 12 of 12, 1st Cir. Order, 2005-KW-0793, 6/27/05.

[24] St. Rec. Vol. 12 of 12, La. S. Ct. Writ Application, 05-KH-2171, 8/19/05 (signed 7/13/05, postal metered 7/15/05).

[25] St. Rec. Vol. 12 of 12, Supplemental Writ Application, 05-KH-2171, 3/9/06.

[26] *State ex rel. Young v. State*, 954 So. 2d 150 (La. 2007); St. Rec. Vol. 12 of 12, La. S. Ct. Order, 2005-KH-2171, 4/20/07.

[27] Rec. Doc. No. 1.

reading the Court finds that Young has presented 15 distinct claims in his federal petition, the memorandum in support, and his supplemental memorandum:[28]

 (1) the State violated the rules of discovery where it withheld evidence of the a co-defendant's confession, a surveillance tape, and the supplemental report, which were not provided in pretrial discovery;
 (2) the State engaged in prosecutorial misconduct when attempting to use the co-defendant to obtain information from Young while in custody;
 (3) the State violated the sequestration order where the State, a DEA Agent Sewell, and a Confidential Informant Raymond Smith had lunch together just prior to the informant's testimony;
 (4) the State manipulated and orchestrated the testimony of Confidential Informant Smith;
 (5) the alibi evidence presented at trial contradicted the State's theory of the case and the verdict;
 (6) the Trial Court violated Young's rights when the court failed to declare a mistrial after being advised the State's witness, Detective John Scanlon, met with a juror during a lunch break;
 (7) the identification process was suggestive;
 (8) the pretrial publicity changed the outcome of the trial when the Trial Court continued the trial on November 15, 2001, which was one day after the Time Picayune published an article;
 (9) the Trial Court erred in overruling Young's challenges for cause;
 (10) insufficient evidence to support the verdict;
 (11) the Trial Court erred in denying the motions for new trial and for post-verdict judgment of acquittal based on insufficient evidence;
 (12) the Trial Court erred in overruling Young's *Batson* challenge;
 (13) the Trial Court erred in admitting unauthenticated hearsay evidence, the tapes and audiotapes, at trial;
 (14) the Trial Court erred in imposing an excessive sentence based on insufficient evidence at the multiple bill hearing;
 (15) the Trial Court violated Young's right to a jury trial by conducting the trial before a jury different from the jury originally selected on August 27 and 28, 2001.

---

[28]Rec. Doc. Nos. 1, 2, 11. Young has a list of 16 "Assignments of Error" and six "Issues" in his memorandum in support of the petition. He also presents an additional five claims in the text of his memorandum. He repeats some of these claims in his supplemental memorandum. After reading each and consolidating issues to avoid redundancy, the Court has compiled this list of 15 grounds for relief.

The State filed a response in opposition to Young's petition arguing that his petition is untimely filed.[29] The State also asserted that Young only raised ten claims in the petition. Improvidently relying on Louisiana procedural law, the State apparently chose to disregard any claim that was not fully briefed. The State argues that all but one of the ten claims recognized are meritless and Young is not entitled to relief. The State further argued that one claim, excessive sentence, is procedurally barred from review.

### III. Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[30] applies to this petition, which is deemed filed in this court under the federal mailbox rule on May 19, 2007.[31] The threshold questions in habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim. *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

---

[29]Rec. Doc. No. 10.

[30]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)). The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[31]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court filed Young's federal habeas petition on June 29, 2007, when the filing fee was paid. Young dated his signature on the petition on May 19, 2007. This is the earliest date on which he could have delivered it to prison officials for mailing. The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition. *See Cousin v. Lensing*, 310 F.3d 843, (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

In this case, the State first argues that Young's petition was not timely filed. This conclusion was apparently based on the State' incorrect assessment that Young's application for post-conviction relief was filed in the state trial court on "October 18, 2005."[32] This is not supported by the record. The application for post-conviction relief was filed stamped by the state court on "October 18, 2004." The Court must also apply the appropriate mailbox rule and concludes that the submission date of October 13, 2004, must actually be considered the filing date of that pleading. The State erroneously penalized Young an entire year in its calculation of timeliness and in reaching its erroneous conclusion that his federal petition is untimely. The State's defense is wholly rejected.

The State also recognizes that one of Young's claims, raising excessive sentence, is in procedural default. This is supported by the record. However, before addressing that defense or the State's other arguments, the Court must note that the State failed to recognize Young's blatant failure to properly exhaust state court remedies as to six of his 15 claims. As will be discussed further below, the exhaustion doctrine requires that Young present each of his claims in a procedurally proper manner to every available level of the state courts. This was completely overlooked by the State. For the following reasons, the Court finds that Young has not fully exhausted state court remedies.

## IV. Exhaustion Requirement

In its memorandum addressing only 10 of Young's 15 claims, the State resolves that Young satisfied exhaustion because he presented his claims to the Louisiana First Circuit Court of Appeal

---

[32]Rec. Doc. No. 10, p. 2.

and the Louisiana Supreme Court.[33] This is not the legal requirement of the exhaustion doctrine and also is not factually supported by the record.

First, the record demonstrates that the State failed to recognize that Young actually raised 15 claims in his federal petition, and not just the 10 it chose to address. The Court further finds that this error is based in part on the State's reliance on state appellate rules of claim presentation and not federal habeas law.

Second, the State incorrectly suggests that the fact that Young raised claims in the state appellate courts is sufficient to satisfy exhaustion. This demonstrates a clear misunderstanding of the exhaustion doctrine and unfamiliarity with federal standards of habeas corpus review. *Accord Prieto v. Quaterman*, 456 F.3d 511 (5th Cir. 2006) (*citing Magouirk v. Phillips*, 144 F.3d 348, 360 (5th Cir. 1998)). As will be discussed later, exhaustion requires presentation of each claim and legal theory through each required level of state court review. Young did not do this as to all claims raised herein. Simply presenting a claim to a higher state court does not comply with Louisiana procedural requirements.

The State inadvertently erred in resolving that Young exhausted state court remedies, and this error does not constitute a valid or express waiver of exhaustion. The Court therefore will raise Young's failure to exhaust *sua sponte*. *McGee v. Estelle*, 722 F. 2d 1206, 1214 (5th Cir. 1984) (*en banc*); *see also* 28 U.S.C. § 2254(b)(3) (2006) (the State's failure to raise exhaustion is not a waiver of the defense).

Accordingly, **petitioner is hereby specifically advised and instructed that this report and recommendation is notice to him that this court is *sua sponte* raising the issue of exhaustion**

---

[33]Rec. Doc. No. 10, p. 3.

**and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.** *Magouirk*, 144 F.3d at 350, 360.

"A fundamental prerequisite to federal habeas relief under § 2254 is the exhaustion of all claims in state court prior to requesting federal collateral relief." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *Whitehead v. Johnson*, 157 F.3d 384, 387 (5th Cir. 1998) (citing *Rose v. Lundy*, 455 U.S. 509, 519-20 (1982)); *Nobles*, 127 F.3d at 419. "A federal habeas petition should be dismissed if state remedies have not been exhausted as to all of the federal court claims." *Whitehead*, 157 F.3d at 387 (citing 28 U.S.C. § 2254(b)(1)(A) (2006); *Rose*, 455 U.S. at 519-20).

The well-established test for exhaustion requires that the substance of the federal habeas claim be fairly presented to the highest state court. *Whitehead*, 157 F.3d at 387 (citing *Picard v. Connor*, 404 U.S. 270, 275-78 (1971)). "State prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," including discretionary review when that review is part of the State's ordinary appellate review procedures. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "A federal court claim must be the 'substantial equivalent' of one presented to the state courts if it is to satisfy the 'fairly presented' requirement." *Whitehead*, 157 F.3d at 387 (citing *Picard*, 404 U.S. at 275-78). "This requirement is not satisfied if the petitioner presents new legal theories or new factual claims in his federal application." *Id.* (citing *Nobles*, 127 F.3d at 420); *Wilder v. Cockrell*, 274 F.3d 255, 259 (5th Cir. 2001). For exhaustion purposes, it also is not enough for a petitioner to have raised the claims in the lower state courts if the claims were not specifically presented to the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). Furthermore, a prisoner does not

fairly present a claim to the state's highest court if that court must read beyond the petition or brief, such as a lower court opinion, to find a claim not otherwise specifically raised. *Id.* at 32.

The record demonstrates that Young has presented to this federal court six grounds for relief that were not properly exhausted in the state courts. A thorough reading of Young's state and federal pleadings reveals that he has not presented his seventh and eighth claims to any state court. These claims, addressing a suggestive identification process and unfair trial because of pretrial publicity, were raised for the first time in his memorandum in support of this federal petition. The exhaustion requirement is satisfied when the substance of each claim has been fairly presented to the highest court of the state. *See O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999); *Fisher v. Texas*, 169 F.3d 295, 302 (5th Cir. 1999); *Carter v. Estelle*, 677 F.2d 427, 443 (5th Cir. 1982). "When a petitioner fails to properly raise his federal claims in state court, he deprives the State of 'an opportunity to address those claims in the first instance' and frustrates the State's ability to honor his constitutional rights." *Cone v. Bell*, __ U.S. __, 129 S. Ct. 1769, 1780 (2009). Young has failed to exhaust state court remedies before bringing his seventh and eighth claims to this federal court.

The record also reflects that Young's claims three, four, five, and six were only raised to the Louisiana Supreme Court in the supplemental writ application filed March 9, 2006. As noted above, the exhaustion requirement is satisfied when the substance of each claim has been fairly presented to the state's highest court in a <u>procedurally proper manner</u>. *O'Sullivan*, 526 U.S. at 842; *Mercadel v. Cain*, 179 F.3d 271, 275 (5th Cir. 1999). Under Louisiana law, post-conviction claims must be first asserted in a uniform application for post-conviction relief in the state district court. *See* La. Code Crim. Proc. Ann. art. 926(A) (2009). A petitioner who bypasses that requirement and asserts a post-conviction claim in the first instance in the state's highest court has not met the federal

exhaustion requirement. Such a claim would not have been presented to the Louisiana Supreme Court in a procedurally proper manner. Therefore, that court never had a "fair opportunity" to pass judgment on the claim. *Mercadel*, 179 F.3d at 275; *see also Morace v. Cain*, No. 99-30033, 1999 WL 706167 (5th Cir. Aug. 20, 1999); *Dupuy v. Butler*, 837 F.2d 699, 702 (5th Cir. 1988). For these reasons, Young failed to properly exhaust state court remedies as to his third, fourth, fifth, and sixth claims.

The record discloses no good cause for Young's failure to properly and fully exhaust all of his claims and the Court can find none from its review of the record. *Rhines v. Weber*, 544 U.S. 269, 277-78 (2005). Therefore, Young's mixed petition, presenting both exhausted and unexhausted claims, should be dismissed without prejudice to allow him to pursue complete exhaustion, unless he chooses to dismiss the unexhausted claims. *Pliler v. Ford*, 542 U.S. 225, 233 (2004) (quoting *Rose*, 455 U.S. at 510); *Whitehead*, 157 F.3d at 387.

## V.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Young's petition for issuance of a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITHOUT PREJUDICE** for failure to exhaust state court remedies.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district

court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[34]

New Orleans, Louisiana, this 1st day of April, 2010.

_____
**KAREN WELLS ROBY
UNITED STATES MAGISTRATE JUDGE**

---

[34]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.