## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **BERTRAM A. YOUNG** | **CIVIL ACTION** |
| **VERSUS** | **NO.  07-3542** |
| **WARDEN JEFFERY TRAVIS** | **SECTION "B"(4)** |

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.  *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.    Procedural History of the Captioned Case

On April 1, 2010, the undersigned issued a Report and Recommendation in which it was recommended, after finding his petition to have been timely filed, that the federal habeas corpus petition filed by the petitioner, Bertram A. Young ("Young"), be dismissed without prejudice as a mixed petition for failure to exhaust state court remedies as to all of the claims raised, unless Young

---

[1]Under 28 U.S.C. § 2254(e)(2), an Evidentiary Hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

dismissed the six unexhausted claims numbered three through eight in the original Report.[2]  The undersigned also agreed with the State that Young's excessive sentence claim (number fourteen in the original Report) was in procedural default.[3]

Young filed objections in which he opposed dismissal of his petition and instead requested that he be allowed to amend his petition to proceed only with the eight exhausted claims.[4]  In response to Young's objections, on August 27, 2010, the District Judge adopted the Report and Recommendation and ordered that Young's six unexhausted claims, numbers three through eight, be dismissed without prejudice and that the eight exhausted claims, numbers one, two, nine through thirteen, and fifteen, be referred back to the undersigned for further consideration.[5]  The Court's Order did not specifically address the fate of the procedurally barred excessive force claim (number fourteen) or the supplemental arguments raised in Young's supplemental memorandum, which also are not exhausted.[6]  Out of an abundance of caution, these claims will also be addressed herein.

## II.   Factual and State Procedural Background

Young is a convicted inmate incarcerated in the B.B. "Sixty" Rayburn Correctional Center in Angie, Louisiana.[7]  On April 12, 2000, Young was charged by bill of information in St. Tammany

---

[2]Rec. Doc. No. 18.

[3]*Id.*

[4]Rec. Doc. No. 19.

[5]Rec. Doc. No. 20.

[6]*See* Rec. Doc. No. 11.

[7]Rec. Doc. No. 1.

Parish with two counts of distribution of cocaine arising from events occurring on July 21, 1999, and February 25, 2000.[8]

The record reflects that, on July 21, 1999, Raymond Smith, a paid confidential informant for the Drug Enforcement Administration ("DEA"), advised his supervisor, James "Skip" Sewell, that he could make a controlled purchase of drugs from Chris Guyot.[9] Smith set up the buy at a tire shop in Slidell, Louisiana, and he was accompanied to that location by an undercover agent, Detective Kevin Honore.

At around 5:30 p.m., two men arrived at the tire shop in a white Toyota sedan. One of the men exited the car and approached the car where Smith and Honore were waiting. The man told Smith that "Bullet" wanted to see him. Smith walked to the automobile bay of the shop and purchased three ounces of cocaine from a man identified later as Bertram Young. Honore had given Smith the money for the purchase. Honore saw the transaction take place. Smith returned to the car and handed the cocaine to Honore. Smith and Honore would later pick Young out of a photographic line-up sometime in March 2000. Honore and another surveillance officer, Agent John Scanlan, also identified Young at trial as the man who made the sale.

After further investigation, on February 23, 2000, a confidential informant, Broderick Hogan, contacted Dwight Guyot, Young's nephew, about a possible drug transaction. The conversation was recorded. On February 25, 2000, Hogan went to Dwight Guyot's home equipped with a body wire. Guyot told him to return later for the drugs. He returned, still wired, and had another conversation

---

[8]St. Rec. Vol. 1 of 12, Bill of Information, 4/12/00.

[9]These facts were taken from the unpublished opinion of the Louisiana First Circuit Court of Appeal on direct appeal. St. Rec. Vol. 12 of 12, 1st Cir. Opinion, 2002-KA-2080, pp. 3-6, 5/9/03; *State v. Young*, 844 So. 2d 424 (La. 1st Cir. App. 2003) (Table).

with Dwight Guyot.  Dwight Guyot told Hogan that he had to get the drugs for the sale from his uncle, Bertram Young.

On his third trip to Dwight Guyot's house that day, Hogan saw Dwight Guyot, his wife, and Young in the front yard.  Young tossed a blue Wal-Mart bag to Guyot.  Inside the house, Dwight Guyot took drugs out of the bag and sold them to Hogan.  Although Young was not in the room, Hogan testified at trial that the drugs were from the same bag that Young threw to Dwight Guyot in the yard.  After the purchase, Hogan gave the drugs, still in the Wal-Mart bag, to DEA officers.

Young presented his own and other witness testimony at trial seeking to establish that he was attending a softball game at the time of the July 21, 1999, transaction.  He conceded at trial, however, that the tire shop was on the way to the ballpark.

Young was first called before a jury for trial on April 17, and 18, 2001.[10]  After the State encountered evidence problems, the Trial Court granted a mistrial.[11]  The Trial Court recalled the matter for jury trial on August 27, 2001.[12]  The next day, after the jury had been selected but not sworn, the Trial Court determined that it needed to conduct a hearing on the admissibility of certain evidence before proceeding to trial.[13]  The Trial Court dismissed the jury and proceeded with its Motion to Suppress hearing.[14]

---

[10]St. Rec. Vol. 1 of 12, Trial Minutes, 4/17/01; Trial Minutes, 4/18/01; Trial Transcript, 4/17/01; St. Rec. Vol. 2 of 12, Trial Transcript (continued), 11/17/01; Trial Transcript, 11/18/01.

[11]St. Rec. Vol. 1 of 12, Trial Minutes, 4/18/01; St. Rec. Vol. 2 of 12, Trial Transcript, 11/18/01.

[12]St. Rec. Vol. 1 of 12, Trial Minutes, 8/27/01; St. Rec. Vol. 2 of 12, Trial Transcript, 8/27/01; St. Rec. Vol. 3 of 4, Trial Transcript (continued), 8/27/01.

[13]St. Rec. Vol. 1 of 12, Trial Minutes, 8/28/01; St. Rec. Vol. 3 of 12, Trial Transcript, 8/28/01; St. Rec. Vol. 4 of 12, Trial Transcript (continued), 8/28/01.

[14]*Id.*; St. Rec. Vol. 3 of 12, Trial Transcript, 8/28/01; St. Rec. Vol. 4 of 12, Trial Transcript (continued), 8/28/01.

On November 13, 2001, the Trial Court again called the matter for jury trial.[15]  Prior to the start of trial, the Court denied the motion to suppress.[16]  The Court proceeded with jury selection and Young was tried before that jury on November 13, through 17, 2001.[17]  He was found guilty as charged on both counts.[18]

The Trial Court denied Young's Motions for New Trial and for Post-Verdict Judgment of Acquittal on December 7, 2001.[19]  After waiver of legal delays, the Trial Court sentenced Young that same day to serve consecutive sentences of 15 years on each count, with the first five years to run without benefit of parole.[20]  The State also filed a multiple offender bill.[21]

On January 4, 2002, the Trial Court adjudicated Young to be a multiple offender and resentenced him on Count One to serve 30 years as a multiple offender with the first five years to be without benefit of parole.[22]

---

[15]St. Rec. Vol. 1 of 12, Trial Minutes, 11/13/01; St. Rec. Vol. 4 of 12, Trial Transcript, 11/13/01.

[16]*Id.*; St. Rec. Vol. 4 of 12, Trial Transcript, 11/13/01.

[17]*Id.*; St. Rec. Vol. 1 of 12, Trial Minutes, 11/14/01; Trial Minutes, 11/15/01; Trial Minutes, 11/16/01; Trial Minutes, 11/17/01; St. Rec. Vol. 4 of 12, Trial Transcript, 11/13/01; St. Rec. Vol. 5 of 12, Trial Transcript (continued), 11/13/01; St. Rec. Vol. 5 of 12, Trial Transcript, 11/14/01; St. Rec. Vol. 6 of 12, Trial Transcript (continued), 11/14/01; St. Rec. Vol. 6 of 12, Trial Transcript, 11/15/01; St. Rec. Vol. 7 of 12, Trial Transcript (continued), 11/15/01; St. Rec. Vol. 8 of 12, Trial Transcript (continued), 11/15/01; St. Rec. Vol. 8 of 12, Trial Transcript, 11/16/01; St. Rec. Vol. 9 of 12, Trial Transcript (continued), 11/16/01; St. Rec. Vol. 9 of 12, Trial Transcript, 11/17/01.

[18]St. Rec. Vol. 1 of 12, Trial Minutes, 11/17/01; Verdict Form, 11/17/01.

[19]St. Rec. Vol. 1 of 12, Sentencing Minutes, 12/7/01; Motion for New Trial, 12/7/01; Motion for Judgment of Acquittal, 12/7/01; St. Rec. Vol. 9 of 12, Sentencing Transcript, 12/7/01.

[20]*Id.*

[21]St. Rec. Vol. 1 of 12, Multiple Bill, 12/7/01.

[22]St. Rec. Vol. 1 of 12, Multiple Bill Hearing Minutes, 1/4/02; St. Rec. Vol. 9 of 12, Multiple Bill Hearing Transcript, 1/4/02.

On Direct Appeal to the Louisiana First Circuit Court of Appeal, Young's counsel raised seven grounds for relief:[23] (1) insufficient evidence; (2) the Trial Court erred in denying the Motions for New Trial and for Post-Verdict Judgment of acquittal based on insufficient evidence; (3) the Trial Court erred in overruling Young's *Batson*[24] challenge; (4) the Trial Court erred in overruling Young's challenges for cause; (5) the Trial Court erred in admitting unauthenticated hearsay evidence, particularly the tapes and audiotapes, at trial; (6) the Trial Court erred in imposing an excessive sentence based on insufficient evidence at the multiple bill hearing; and (7) the Trial Court violated Young's right to a jury trial by conducting the trial before a jury different from the jury originally selected on August 27, and 28, 2001.

The Louisiana First Circuit affirmed his convictions and sentences after finding each of his claims to be meritless and unsupported by the record.  The Court also determined that his excessive sentence claim was barred from appellate review for lack of a contemporaneous objection pursuant to La. Code Crim. P. art. 881.1(D) and *State v. Duncan*, 667 So. 2d 1141, 1143 (La. Ct. App. 1995).

The Louisiana Supreme Court denied Young's subsequent writ application without reasons on December 19, 2003.[25]  Young's conviction became final 90 days later, on March 18, 2004, because he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court

---

[23]St. Rec. Vol. 12 of 12, 1st Cir. Opinion, 2002-KA-2080, pp. 3-6, 5/9/03; Appeal Brief, 2002-KA-2080, 11/6/02; Supplemental Appeal Brief, 2002-KA-2080, 12/27/02.

[24]*Batson v. Kentucky*, 476 U.S. 79 (1986).  In *Batson*, the United States Supreme Court held that peremptory challenges could not be used to exclude jurors solely because of race unless a neutral reason for the peremptory challenge could be shown.

[25]*State v. Young*, 861 So. 2d 556 (La. 2003); St. Rec. Vol. 12 of 12, La. S. Ct. Order, 2003-KO-1699, 12/19/03; La. S. Ct. Letter, 6/13/03 (postal metered 5/30/03).  The record does not contain a copy of this writ application.

is considered in the finality determination under Title 28 U.S.C. § 2244(d)(1)(A)); U.S. S. Ct. Rule 13(1).

On October 13, 2004, Young submitted an application for post-conviction relief to the Trial Court raising five grounds for relief:[26] (1) the State engaged in prosecutorial misconduct when it hired a co-defendant to obtain privileged defense strategy in violation of the Sixth Amendment; (2)(a) there was no probable cause for the initial arrest in the arrest warrant affidavit, and (b) the information in the arrest warrant affidavit was obtained without *Miranda* warnings; (3) the State withheld evidence of the surveillance tape and the supplemental report, which were not provided in pretrial discovery; (4) the Trial Court erred and violated the confrontation clause in precluding alibi witness testimony at trial; and (5) counsel was ineffective for failure to investigate, failure to call alibi witnesses, and for refusing to put Young on the stand to testify in support of the alibi defense.

On February 10, 2005, the Trial Court signed a judgment, which was filed on March 10, 2005, denying Young's application.[27]  The Court held that the claims were impermissibly repetitive, because they were or should have been previously presented at or before trial.  The Court also determined that his claims one, three, four, and five were otherwise without merit and not supported by the record.  The Court also held that the second claim was not preserved for review because there was no pretrial motion to quash or to suppress on these issues.

---

[26]St. Rec. Vol. 12 of 12, Uniform Application for Post-Conviction Relief, 10/18/04 (signed 10/13/04).

[27]St. Rec. Vol. 12 of 12, Judgment with Reasons, 3/10/05 (signed 2/10/05); Clerk's Letter, 3/15/05.

7

On June 27, 2005, the Louisiana First Circuit denied Young's subsequent writ application on the showing made, noting that he failed to include copies of the necessary pleadings to support his claims.[28]

Young also submitted a writ application to the Louisiana Supreme Court on July 13, 2005, in which he raised the same five post-conviction claims previously presented to the Trial Court.[29] He supplemented that writ application on March 9, 2006, raising six claims, four of which had not been previously raised:[30] (1) the State violated the sequestration order where the State, a DEA agent, and a confidential informant had lunch together just prior to the informant's testimony; (2) the State manipulated and influenced the confidential informant's testimony; (3) the alibi evidence presented at trial contradicted the State's theory of the case and the verdict; and (4) the Trial Court violated Young's rights when the court failed to take action after being advised that the State's witness, Detective John Scanlon, met with a juror during a lunch break.  The Louisiana Supreme Court denied Young's application without reasons on April 20, 2007.[31]

## III.   <u>Federal Petition</u>

On June 29, 2007, the Clerk of this Court filed Young's petition for federal habeas corpus relief.[32]  As noted in the undersigned's first Report, under a broad reading the Court determined that Young presented 15 distinct claims to this Court in his federal petition, the memorandum in support,

---

[28]St. Rec. Vol. 12 of 12, 1st Cir. Order, 2005-KW-0793, 6/27/05.

[29]St. Rec. Vol. 12 of 12, La. S. Ct. Writ Application, 05-KH-2171, 8/19/05 (signed 7/13/05, postal metered 7/15/05).

[30]St. Rec. Vol. 12 of 12, Supplemental Writ Application, 05-KH-2171, 3/9/06.

[31]*State ex rel. Young v. State*, 954 So. 2d 150 (La. 2007); St. Rec. Vol. 12 of 12, La. S. Ct. Order, 2005-KH-2171, 4/20/07.

[32]Rec. Doc. No. 1.

and his supplemental memorandum.[33]   Pursuant to the Court's prior ruling, the nine claims

remaining for review are as follows:[34]

    (1)    the State violated the rules of discovery where it withheld evidence of the a co-defendant's confession, a surveillance tape, and the supplemental report, which were not provided in pretrial discovery;

    (2)    the State engaged in prosecutorial misconduct when attempting to use the co-defendant to obtain information from Young while in custody;

    (9)    the Trial Court erred in overruling Young's challenges for cause;

    (10)    insufficient evidence to support the verdict;

    (11)    the Trial Court erred in denying the motions for new trial and for post-verdict judgment of acquittal based on insufficient evidence;

    (12)     the Trial Court erred in overruling Young's *Batson* challenge;

    (13)    the Trial Court erred in admitting unauthenticated hearsay evidence, the tapes and audiotapes, at trial;

    (14)    the Trial Court erred in imposing an excessive sentence based on insufficient evidence at the multiple bill hearing; and

    (15)    the Trial Court violated Young's right to a jury trial by conducting the trial before a jury different from the jury originally selected on August 27 and 28, 2001.

The State filed a response in opposition to Young's petition arguing that his petition is

untimely filed and that, of the ten out of fifteen claims it chose to address, nine were meritless and

---

[33]Rec. Doc. Nos. 1, 2, 11.  Young listed 16 "Assignments of Error" and six "Issues" in his memorandum in support of the petition.  He also presented an additional five claims in the text of his memorandum.  He repeated some of the claims in his supplemental memorandum.  After reading each and consolidating issues to avoid redundancy, the Court compiled a list of 15 grounds for relief.

[34]The Court already has dismissed without prejudice, on Young's motion, the following six claims as numbered in the original report:

    (3)    the State violated the sequestration order where the State, a DEA Agent Sewell, and a Confidential Informant Raymond Smith had lunch together just prior to the informant's testimony;

    (4)    the State manipulated and orchestrated the testimony of Confidential Informant Smith;

    (5)    the alibi evidence presented at trial contradicted the State's theory of the case and the verdict;

    (6)    the Trial Court violated Young's rights when the court failed to declare a mistrial after being advised that the State's witness, Detective John Scanlon, met with a juror during a lunch break;

    (7)    the identification process was suggestive; and

    (8)    the pretrial publicity changed the outcome of the trial when the Trial Court continued the trial on November 15, 2001, which was one day after the Times-Picayune published an article.

one was in procedural default.[35]  In response, Young filed a supplemental memorandum adding

additional arguments, with no new claims, in support of claim numbers one through six.[36]

## IV.   Standards of Initial Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-

132, 110 Stat. 1214,[37] applies to this petition, which is deemed filed in this court under the federal

mailbox rule on May 19, 2007.[38]  The threshold questions in habeas review under the amended

statute are whether the petition is timely and whether the claim raised by the petitioner was

adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies

and must not be in "procedural default" on a claim.  *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th

Cir. 1997) (citing 28 U.S.C. § 2254(b), (c) (2006)).

The Court has already determined that Young's petition is timely, and the issue of exhaustion

has been resolved.  The State also recognizes that at least one of Young's claims, challenging an

---

[35]Rec. Doc. No. 10.

[36]Rec. Doc. No. 11.

[37]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[38]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999), *cert. denied*, 529 U.S. 1057 (2000); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of court filed Young's federal habeas petition on June 29, 2007, when the filing fee was paid.  Young dated his signature on the petition on May 19, 2007.  This is the earliest date on which he could have delivered it to prison officials for mailing.  The fact that he paid the filing fee on a later date does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843 (5th Cir. 2002) (mailbox rule applies even if inmate has not paid the filing fee at the time of mailing) (citing *Spotville*, 149 F.3d at 374).

excessive sentence, is in procedural default.  The Court finds that this defense is supported by the record as to that claim and two others as addressed below.

## V.      Procedural Default (Claim Nos. One, Two, and Fourteen)

The record demonstrates that Young's first, second, and fourteenth claims, alleging that the state violated discovery by withholding evidence, prosecutorial misconduct, and excessive sentence were procedurally barred from review.[39]  Specifically, the Louisiana First Circuit found that the excessive sentence claim (Claim No. Fourteen) was not preserved for appellate review as required by La. Code Crim. P. art. 881.1.  This was the last reasoned decision on this issue.  *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Also, on post-conviction review, the Trial Court held that Young's discovery violation and prosecutorial misconduct claims (Claim Nos. One and Two) were barred from review as repetitive, because they either were not raised before or at trial and were not presented or addressed on direct appeal.  This was the last reasoned opinion on these issues.  *Ylst*, 501 U.S. at 802.

The denial of relief on these three claims was based on state procedural grounds and Young's procedural default under the state procedural rules relied on by the state courts.  Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state

---

[39]The State raised procedural default as to the excessive sentence.  The Court extends that and raises *sua sponte* the issue of procedural default as to the two other claims.  This Court has discretion to raise procedural default *sua sponte*, provided that the petitioner has notice that the issue is being considered.  *Fisher v. Texas*, 169 F.3d 295, 301 (5th Cir. 1999); *Magouirk*, 144 F.3d at 358.  Petitioner is advised and instructed that this Report and Recommendation is notice to him that this Court is *sua sponte* raising the issue of procedural default and that petitioner must submit any evidence or argument concerning the default as part of any objections he may file to this report.  *Magouirk*, 144 F.3d at 350, 360.

court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997), *cert. denied*, 523 U.S. 1125 (1998); *Amos v. Scott*, 61 F.3d 333, 338 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state law" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

### A.     Independent State Grounds

For the foregoing state-imposed procedural bars to prevent review by this federal habeas court, the bar must be independent and adequate. A procedural restriction is "independent" if the state court's judgment "clearly and expressly" indicates that it is independent of federal law and rests solely on a state procedural bar. *Amos*, 61 F.3d at 338. To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902.

In this case, the state appellate court held that Young's excessive sentence claim was barred by the requirements of La. Code Crim. P. art. 881.1, which provides in relevant part that "[f]ailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or

the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review."

The Trial Court also denied relief on Young's two post-conviction claims because they were repetitive and otherwise not timely raised to the trial court or the appellate court.  The word "repetitive" is a reference to language in La. Code Crim. P. art. 930.4 which addresses the grounds for dismissal of post-conviction applications in Louisiana.  Specifically, Art. 930.4(B) provides that "[i]f the application alleges a claim of which the petitioner had knowledge and inexcusably failed to raise in the proceedings leading to conviction, the court may deny relief."  Also, under Art. 930.4(C), "[i]f the application alleges a claim which the petitioner raised in the trial court and inexcusably failed to pursue on appeal, the court may deny relief."

Furthermore, in keeping with the Trial Court's reasoning, Louisiana law, specifically La. Code Crim. P. art. 841, provides that an "[a]n irregularity or error cannot be availed of after verdict unless it was objected to at the time of occurrence."  It is well settled that the "contemporaneous objection" rule is an additional "independent and adequate" state procedural ground which bars federal habeas corpus review.  *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977).

The Court recognizes that the Trial Court also commented on the merits of the two post-conviction claims.  However, it is well settled that "[a] state court expressly and unambiguously bases its denial of relief on a state procedural default even if it alternatively reaches the merits of a [petitioner's] claim."  *Fisher v. Texas*, 169 F.3d 295, 300 (5th Cir. 1999).  The Court therefore proceeds here on the procedural bar imposed by the Trial Court.

The reasons for the state courts' dismissal of these three claims were independent of federal law and instead relied strictly on state procedural requirements. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902.

### B.   <u>Adequate State Grounds</u>

The question of the adequacy of a state procedural bar is itself a federal question. *Douglas v. Alabama*, 380 U.S. 415, 422 (1965); *Jenkins v. Gramley*, 8 F.3d 505, 507 (7th Cir. 1993). To be "adequate," the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Glover*, 128 F.3d at 902 (citing *Amos*, 61 F.3d at 339). A state procedural bar is presumptively adequate when the state court expressly relies on it in deciding not to review a claim for collateral relief. *Id.*

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (quoting *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); and citing *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)); *accord Turner v. Johnson*, 46 F. Supp.2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAffee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985)); *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)).

In keeping with this rule, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel. Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094 at *4 n.2 (N.D. Ill. July 18, 2002). For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, No. 00CV684-Y, 2001 WL 611164 at *4 n.10 (N.D. Tex. May 30, 2001); *see also*, *Johnson v. Lensing*, No. 99-0005, 1999 WL 562728 at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (Art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97-1546, 1999 WL 518843 (E.D. La. July 20, 1999) (Mentz, J.) (Art. 930.8 was not adequate to bar review because it was misapplied). However, where such a basis exists in state law, as it does in this case, the bar must stand.

As noted above, the basis for dismissal of the excessive sentence claim was denied by the Louisiana First Circuit pursuant to La. Code Crim. P. art. 881.1, because the issue was not properly preserved for appellate review. The record supports the finding that no such claim was preserved in the state trial court before the appeal. Furthermore, the federal courts have consistently found this state procedural bar to be evenhandedly applied and to be adequate to bar federal review. *Semien v. Warden*, No. 08-0162, 2009 WL 1393316, at *6-7 (W.D. La. May 12, 2009) (Order adopting Report and Recommendation); *Weaver v. Cain*, No. 04-1642, 2006 WL 2792427, at *12 (E.D. La. Sep. 25, 2006) (Order adopting Report and Recommendation); *Fontan v. Ieyoub*, No. 94-1416, 1994 WL 374296, at *5-6 (E.D. La. Jul. 5, 1994) (Beer, J.).

The state trial court also denied the two post-conviction claims related to discovery violations and prosecutorial misconduct pursuant to La. Code Crim. P. arts. 930.4(B) or (C) and

arguably under La. Code Crim. P. art. 881.1.  The record supports the imposition of the procedural bars under Art. 930.4(B) and/or (C) since Young did not challenge the alleged discovery violation and prosecutorial misconduct in the trial court or the appellate court before seeking post-conviction review.  In addition, the federal courts have held that the bars imposed under Art. 930.4(B) and (C) are adequate to foreclose federal review of a claim barred thereunder by the state courts.  *Simmons v. Cain*, No. 06-2130, 2008 WL 2185422, at *6 (E.D. La. May 20, 2008) (Berrigan, J.); *Monroe v. Cain*, No. 05-0929, 2006 WL 5507856, at *8 (E.D. La. Oct. 17, 2006) (Report and Recommendation), *adopted as modified on other grounds*, *Monroe v. Cain*, No. 05-0929, 2008 WL 818968, at *1 (E.D. La. Mar. 24, 2008) (Berrigan, J.).

Further, the federal courts have held that the failure to preserve a claim under La. Code Crim. P. art. 841 is an adequate state grounds which bars review by the federal courts in a habeas corpus proceeding.  *See*, *Toney v. Cain*, 24 F.3d 240, 1994 WL 243453, at *2 (5th Cir. May 20, 1994) (Table, Text in Westlaw); *Proctor v. Butler*, 831 F.2d 1251, 1253 (5th Cir. 1987); *Riggins v. Butler*, 705 F. Supp. 1205, 1208 (E.D. La. 1989); *accord*, *Wainwright v. Sykes*, 433 U.S. 72, 87-88 (1977) (Louisiana's contemporaneous objection rule is an adequate state bar to federal review of a defaulted claim).

For the foregoing reasons, the bars imposed upon Young's claims are supported by the record and adequate to foreclose review by this federal Court.

## C.    <u>Cause and Prejudice</u>

To establish a cause for his procedural default, Young must demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  He has not demonstrated in his pleadings the

existence of any objective factor external to the defense that impeded his, or his counsel's, ability to raise this claim in a procedurally proper manner.

There is no obvious cause in the record for the failure to timely or properly challenge the jury charge or the admission of the confession as required by Louisiana law.  The law is settled that "the mere fact that counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for procedural default."  *Murray*, 477 U.S. at 486.  Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed and the petitioner has not alleged any actual prejudice.  *See Ratcliff v. Estelle*, 597 F.2d 474 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681-82 (5th Cir. 1977)).

### D.    Fundamental Miscarriage of Justice

Alternatively, a petitioner seeking federal habeas review can escape a procedural bar upon a showing that the federal court's failure to review the defaulted claim will result in a fundamental miscarriage of justice.  To establish this, petitioner must provide this Court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray*, 477 U.S. at 496; *Glover*, 128 F.3d at 902.  "To satisfy the 'factual innocence' standard, a petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt." *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *Nobles*, 127 F.3d at 423 n. 33 (actual innocence factor requires a showing by clear and convincing evidence that "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.")

Young has not pointed to any new or existing evidence which would create a reasonable doubt as to his guilt or which would establish his actual innocence. *Murray*, 477 U.S. at 496. Furthermore, the arguments now raised in support of this federal habeas corpus petition were before the state courts and offer no basis for reasonable doubt on habeas corpus review. The Court has also reviewed his insufficient evidence claim later in this Report and has found that the claim is meritless. When the petitioner has not factually established his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Because Young has not met this alternative exception to the procedural bar, his procedurally defaulted claims alleging discovery violations (Claim No. One), prosecutorial misconduct (Claim No. Two), and excessive sentence (Claim No. Fourteen), must be dismissed with prejudice without review of the merits. The Court, however, will proceed to review of the remaining claims.

## VI.   <u>Standards of Review of the Merits</u>

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000), *cert. denied*, 532 U.S. 1039 (2001). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485.

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it either: (1) correctly identifies the governing rule but then applies it unreasonably to the facts; or (2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable. *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *cf. Wright v. West*, 505 U.S. 277, 304 (1992). The court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *See e.g., Id.*, at 305; *see also Chambers v. Johnson*, 218 F.3d 360, 364 (5th Cir.), *cert. denied*, 531 U.S. 1002 (2000). "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" (brackets in original) *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006).

**VII.** **Analysis**

    **A.** **Trial Court Overruled Challenges for Cause (Claim No. Nine)**

Young alleges that the Trial Court erred in denying his challenges for cause. He does not expound on this issue in his pleadings before this Court. However, the State contends in its opposition memorandum that his issue refers to the denial of the challenges for cause as to prospective jurors Randy C. Ventline, Diane St. Germaine, and Debbie Reynolds, and argues that there was no basis for the state trial court to excuse these jurors.

This issue was raised by Young's counsel on direct appeal as to the three panelists identified by the State. Young argues that the Trial Court erred in denying the challenges for cause made after he had exhausted his peremptory exceptions. The Louisiana First Circuit denied relief finding that Young failed to establish that the Trial Court abused its discretion in overruling the challenges for cause. This was the last reasoned opinion on the issue. *See Ylst*. 501 U.S. at 802.

The Sixth Amendment and Fourteenth Amendments provide a defendant with the right to a fair trial, which includes the right to an impartial jury. *Morgan v. Illinois*, 504 U.S. 719, 727 (1992); *Ross v. Oklahoma*, 487 U.S. 81 (1988); *Miniel v. Cockrell*, 339 F.3d 331, 338 (5th Cir. 2003). In selecting such a jury, "[t]he standard for determining when a venire member may be

excluded for cause is whether the prospective juror's views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Soria v. Johnson*, 207 F.3d 232, 242 (5th Cir. 2000) (quoting *Wainwright v. Witt*, 469 U.S. 412, 424 (1985)). "[R]efusal to grant a challenge for cause is within the discretion of the trial court, and it does not provide a basis for habeas corpus relief unless the disqualifying fact was so prejudicial that the refusal deprived the petitioner of a fundamentally fair trial." *Sudds v. Maggio*, 696 F.2d 415, 416 (5th Cir.1983).

Pursuant to La. Code Crim. P. art. 797, a juror may be challenged for cause if, among other things, the juror is "not impartial, whatever the cause of his partiality." Implicit in a state court's denial of a challenge for cause is that the juror was not biased. *Jones v. Butler*, 864 F.2d 348, 362 (5th Cir. 1988); *Miniel*, 339 F.3d at 338-39 (citing *Jones*); *Montoya v. Scott*, 65 F.3d 405, 419 n. 29 (5th Cir. 1995); *see also Fuller v. Johnson*, 114 F.3d 491, 500-01 (5th Cir. 1997). This state court finding of non-bias is a factual one that is accorded the "presumption of correctness" under 28 U.S.C. § 2254(d). *Jones*, 864 F.2d at 362; *Williams v. Cockrell*, 46 Fed. Appx. 227, 2002 WL 1940099, at *7 (5th Cir. Jul. 25, 2002).

Thus, the state trial court's "finding of impartiality is therefore 'presumed correct' unless it is 'not fairly supported' by the record viewed 'as a whole.'" *Jones*, 864 F.2d at 362 (quoting 28 U.S.C. § 2254(d)(8)). Additionally, the United States Supreme Court has made clear that "deference must be paid to the trial judge who sees and hears the juror." *Wainwright*, 469 U.S. at 426. As outlined above, Young has the burden of rebutting this presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Based on the Court's review, Young has not met this burden.

1.      **Randy C. Ventline**

During voir dire of the second potential juror panel on November 13, 2001, defense counsel

took extended time to discuss with the panel the importance of the right of a defendant not to take

the stand and that the decision to do so cannot be held against him.  At one point, counsel inquired

whether the panel members would render a fair verdict, and the following exchange took place

between counsel and Mr. Ventline:[40]

MR. ALFORD:      . . . Do all of you promise me that if you are selected on this jury, that you will make an effort, a whole-hearted effort, to return your individual verdict after listening to and discussing the entire matter with your fellow jurors . . .?

. . .

MR. VENTLINE:   I will do it if you promise not to bring up the fact about you can't hold it against me if he doesn't take the stand.  We've been over it all day.

MR. ALFORD:      You haven't seen how important it is?

MR. VENTLINE:   Ask if anyone in here isn't aware of it.

MR. ALFORD:      Well, do you understand the importance?

MR. VENTLINE:   Yes, I do.

After the questioning of the panel was completed, the Court and counsel proceeded with

selection and challenges from counsel.  When the Court got to Mr. Ventline's name, defense counsel

entered the following challenge for cause:[41]

THE COURT:      Any challenges for cause?

. . .

---

[40]St. Rec. Vol. 5 of 12, Trial Transcript (continued), p. 252-53, 11/13/01.

[41]*Id*., p. 257-58.

22

MR. ALFORD:         Your honor, I have an unusual one, number 228, Mr. Ventline.  I want to challenge him for cause, because I don't think he likes me.  Wait a minute.  I don't think I have done anything to him.

THE COURT:         That's not a charge challenge.

MR. ALFORD:         I think he's smart, you know, and I think his comment to me was totally inappropriate.  He said well, I'll say that if you'll quit talking about the defendant taking the stand.  I think that is inappropriate behavior for a juror.

THE COURT:         He was kidding with you.

MR. ALFORD:         You think he was kidding?

THE COURT:         He was kidding with you.

MR. ALFORD:         I don't think he was, Judge.  Would you have taken it as a joke, Jack?

MR. HOFFSTADT:   I wish you would have stopped talking about it, too.  You have gone on for hours and hours, but I thought he was kidding with you, yes.

MR. ALFORD:         I don't think he was kidding.

THE COURT:         I am not going to allow the challenge.

Later, when the Court reviewed the list with counsel for peremptory challenges, defense counsel exercised his last peremptory challenge to exclude Mr. Ventline.[42]

The Trial Court was well-within its discretion in determining that Mr. Ventline's comments were made in jest and were not biased in nature towards the defense.  Reviewing the transcript as a whole, there is nothing in the record, and Young points to nothing, that would indicate that Mr. Ventline was biased.  He answered appropriately to the questions of being fair in his verdict and in

---

[42]*Id.*, p. 267.

requiring the State to meet its burden beyond a reasonable doubt.[43]  He also answered that he would

not hold it against the defendant if the defendant did not testify.[44]  The record therefore supports the

Trial Court's factual finding of no bias.

### 2.   Diane St. Germaine

During voir dire of the third panel of prospective jurors, Diane St. Germaine responded to

questions by counsel and the Court to the panel that she had a friend who was an assistant district

attorney in New Orleans and that her husband's cousin was with the FBI.[45]  When the Court inquired

of time conflicts to complete the trial, Mrs. St. Germaine indicated that, if the trial continued through

to Saturday, she was scheduled to attend the wedding of her husband's partner.  During later

questioning, the panel was questioned by counsel about the personal effects of drugs in their lives.

Mrs. St. Germaine answered that when her son was a teenager, he had engaged in gang activities and

had taken drugs.[46]  She noted that he did not have an addiction and was able to move on from that

period.  She also noted that, about eleven years prior, the son of her husband's partner had taken

ecstasy and jumped out of a car, leaving him with permanent brain damage.  She advised the Court

that these were different situations that would not prejudice her or effect her ability perform her

duties as a juror.[47]

During selection, the Trial Court indicated that it was not inclined to excuse any of the four

jurors, including Mrs. St. Germaine, who had social engagements on the Saturday because the Court

---

[43]*Id.*, pp. 253, 256.

[44]*Id.*, p. 249.

[45]St. Rec. Vol. 5 of 12, Trial Transcript (continued), p. 285, 11/13/01.

[46]*Id.*, pp. 299-300.

[47]*Id.*, p. 300.

anticipated that trial would end by Friday night and because alternates could be empaneled if Saturday became an issue.[48]

By the conclusion of the selection of the initial twelve person panel,  the Trial Court decided to select four alternates and gave each side one peremptory challenge to use.[49]  During selection of these alternates, defense counsel entered an objection for cause and hardship as to Mrs. St. Germaine.[50]  As his reasons, he offered that Mrs. St. Germaine indicated that she had a conflict if the trial went to Saturday.  He also recalled that she had a friend in the New Orleans District Attorney's Office and a relative in the FBI.  He also referenced her son's drug use and that of the son of her husband's partner.  The Trial Court denied the challenge finding that there was no indication that she could not be a fair juror.[51]  The Court also noted that it had already addressed the Saturday conflict issue.  St. Germaine was ultimately dismissed when the defense used a peremptory challenge.

A review of the record supports the Trial Court's finding of no bias or partiality.  Mrs. St. Germaine volunteered to the Court that she recognized that the drug issues with her son and her friend's son were different incidents that would not effect her ability to sit as a juror.[52]  She did not indicate that her relationship to the assistant district attorney or the FBI agent would impact her

---

[48]*Id*., pp. 329-330.

[49]*Id*., pp. 333-34.

[50]*Id*., p. 334-35.

[51]*Id*., p. 335.

[52]*Id*., p. 300.

ability to be fair and impartial.[53]  She also indicated that she would return a verdict of not guilty if

the State did not prove its case beyond a reasonable doubt.[54]  In all, there is nothing in the record to

indicate that she would not be an impartial juror.

### 3.      Debbie Reynolds

During the same selection of alternate jurors, Debbie Reynolds indicated that she had a

stepbrother who was a detective in the Slidell Police Department and that her brother-in-law was

currently enrolled in courses to join the St. Tammany Parish Sheriff's Office.[55]  She advised counsel

and the Court that this would not effect her ability to be impartial and fair.[56]  In response to counsel's

question of whether she could return a verdict of not guilty if the State failed to prove their case

beyond a reasonable doubt, Reynolds answered affirmatively.[57]

After having used his sole peremptory challenge to exclude Mrs. St. Germaine above,

defense counsel urged a challenge for cause as to Debbie Reynolds.  Counsel based this on Mrs.

Reynolds' relationships with two police officers.  The Trial Court denied the challenge and found

that there was no reason to believe that she could not be fair and impartial.[58]  Mrs. Reynolds was

empaneled as an alternate juror for trial.

A review of the record supports the Trial Court's finding of no bias or partiality. Mrs.

Reynolds indicated that her relationship with two police officers would not effect her ability to be

---

[53]*Id.*, p. 286.

[54]*Id.*, p. 326.

[55]*Id.*, pp. 285, 315.

[56]*Id.*, p. 316.

[57]*Id.*, p. 326.

[58]*Id.*, p. 336.

fair and impartial.[59]  Under Louisiana law, the mere relationship between a prospective juror and a law enforcement officer is not alone grounds to strike the juror for cause.  *State v. Kang*, 859 So.2d 649, 652 (La. 2003).  The same is true under federal law; a petitioner cannot establish bias merely by demonstrating that a relationship existed between seated jurors and members of law enforcement.  *Accord*, *Anthony v. Cain*, No. 2009 WL 3564827, at *15 (E.D. La. Oct. 29, 2009) (citing *United States v. Crooks*, 83 F.3d 103, 107 & n. 16 (5th Cir. 1996) (marriage to law enforcement  official, without more, insufficient to constitute juror bias)).  Such a relationship was not enough to warrant dismissal for cause and is not enough to overcome the presumption of correctness on the part of the Trial Court.

Mrs. Reynolds also indicated that she would return a verdict of not guilty if the State did not prove its case beyond a reasonable doubt.[60]  The record therefore further supports the Trial Court finding that Mrs. Reynolds would be a fair and impartial juror.  The Court also notes that, although Mrs. Reynolds was seated as an alternate, she was released with the other alternates prior to deliberations.[61]  She played no role in the ultimate verdict.  Consequently, she could not have infected the jury's decision making process because she was not a party to it.

For the foregoing reasons, Young has not established that the Trial Court erred in denying the challenges for cause as to Mr. Ventline, Mrs. St. Germaine, or Mrs. Reynolds.  The state courts' denial of relief was not contrary to, or an unreasonable application of, Supreme Court law.  Young is not entitled to relief on this issue.

---

[59]*Id.*, p. 316.

[60]*Id.*, p. 326.

[61]St. Rec. Vol. 9 of 12, Trial Transcript, p. 104, 11/17/01.

**B.**   **Insufficient Evidence to Support the Verdict and Denial of Motions for New Trial and for Post-verdict Judgment of Acquittal Based on Insufficient Evidence (Claim Nos. Ten and Eleven)**

Young alleges that there was insufficient evidence to support the conviction for distribution of cocaine and that his motion for post-verdict judgment of acquittal should have been granted.  He claims that the evidence did not establish that he was the person from whom Smith purchased the drugs.

Young's counsel raised these claims on direct appeal to the Louisiana First Circuit, arguing that there was insufficient evidence of Young's participation in the undercover drug deal to support the conviction.  The Court denied relief and resolved that the evidence was sufficient under the standards in *Jackson v. Virginia*, 433 U.S. 307 (1979), and related state case law.  In its reasoned decision, the Louisiana First Circuit held that a reasonable jury could have found under the facts and circumstantial evidence that Young was the person who sold drugs that day and could have reasonably rejected his alibi defense.  This was the last reasoned decision on the issue since the Louisiana Supreme Court denied the subsequent writ application without stated reasons.  *See Ylst*, 501 U.S. at 802.

To the extent Young claims that the state trial court improperly denied his motions for new trial and for post-verdict judgment of acquittal under state law, that claim does not warrant federal habeas corpus relief.  Federal courts have held that a state court's denial of a motion for a new trial does not necessarily constitute a violation of a federal constitutional right.  *Haygood v. Quarterman*, 239 Fed. Appx. 39, 42 (5th Cir. Jun.14, 2007) (citing *Dickerson v. Guste*, 932 F.2d 1142, 1145 (5th Cir.1991)).

Furthermore, under Louisiana law, a post-verdict judgment of acquittal may "be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." La. Code Crim P. art. 821(B). Such a motion raises the question of sufficiency of the evidence and is therefore considered under a standard virtually identical to that applicable to appellate review of claims of insufficient evidence under *Jackson*. *State v. Jones*, 952 So.2d 705, 707 (La. App. 4th Cir. 2006) (citing *State v. Thibodeaux*, 750 So.2d 916, 926 (La. 1999); *State v. Williams*, 891 So.2d 26, 30 (La. App. 4th Cir. 2004) (citing *State v. Brown*, 620 So.2d 508, 513-514 (La. App. 4th Cir. 1993). In Louisiana, appellate review of the denial of a Motion for Post-Verdict Judgment of acquittal also is controlled by the standards set forth in *Jackson*. *State v. Durand*, 963 So.2d 1028, 1033 (La. App. 5th Cir. 2007). This Court's review of Young's sufficiency of the evidence claim will be considered under *Jackson* as well.

The *Jackson* standard requires the Court to determine whether, after viewing the entire record and the evidence in the light most favorable to the prosecution, a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Gilley v. Collins*, 968 F.2d 465, 467 (5th Cir. 1992); *Guzman v. Lensing*, 934 F.2d 80, 82 (5th Cir. 1991).

Claims of insufficient evidence present a mixed question of law and fact. *Maes v. Thomas*, 46 F.3d 979, 988 (10th Cir. 1995). The Court must therefore give deference to the state court's findings unless the decision was contrary to, or involved an unreasonable application of *Jackson*. *Gilley*, 968 F.2d at 467 (citing *Schrader v. Whitley*, 904 F.2d 282, 284 (5th Cir. 1990)).

Young was convicted on two counts of distribution of cocaine in violation of La. Rev. Stat. Ann. § 40:967.   Young argues that the State failed to provide sufficient evidence to prove his identity as the person who sold cocaine on July 21, 1999.

La. Rev. Stat. Ann. § 40:967 provides that it shall be unlawful for any person "knowingly or intentionally . . .. [t]o . . . distribute, or dispense, . . . a controlled dangerous substance . . . classified in Schedule II[.]"  Cocaine and its derivatives are listed in Schedule II under La. Rev. Stat. § 40:964.  *State v. Jones*, 927 So.2d 514, 522 (La. App. 5th Cir. 2006).  Thus, under Louisiana law, a defendant is guilty of distribution of cocaine when he transfers possession or control of cocaine to his intended recipients.  *State v. Housley*, 884 So.2d 1204, 1207 (La. App. 5th Cir. 2004).  The State must also prove the defendant's identity as the perpetrator.  *State v. Jones*, 927 So.2d at 522 (citing *State v. Williams*, 901 So.2d 527, 530 (La. App. 5th Cir. 2002).

In this case, the State produced evidence to establish that Young distributed or transferred cocaine to a confidential informant, Raymond Smith, on July 21, 1999, in Slidell Louisiana, and that he distributed or transferred cocaine to a known drug dealer, Broderick Hogan, also acting as an informant, on February 25, 2000, in Covington, Louisiana.  The jury heard the testimony of the law enforcement officers who saw Young at the sale in Slidell on July 21, 1999, and recognized him in court as the same person.

The evidence also established that Smith contacted Agent James "Skip" Sewell about making a purchase of cocaine.[62]  Sewell met with Raymond Smith and his cousin Larry Smith to arrange the

---

[62]St. Rec. Vol. 5 of 12, Trial Transcript, Agent Sewell, p. 74, 11/14/01; St. Rec. Vol. 6 of 12, Trial Transcript (continued), Raymond Smith, p. 116, 11/14/01.

purchase of cocaine from Chris Guyot, the target of the drug operation.[63]  Smith, Agent Kevin Honore, and Larry Smith went to the Wheel and Tire Connection to meet with Guyot.[64]  Honore had $3000 and a KEL wire device and was to make the buy from Guyot.

The three men waited in the car as to two black males drove up and entered the store.[65]  Chris Guyot followed the men into the store.  A few minutes later, one of the men, Keith Ducre, walked out to Smith's car and told him that Bullet wanted him.[66]  Smith and Honore attempted to get out of the car, but the man stopped Honore and said that only Smith could get out.[67]

Smith walked up to a truck and asked to see the drugs.  He went back to get the money from Honore.[68]  Smith was able to get the money but not the KEL wire device.  Smith made the purchase, returned to the car and drove off.[69]  He identified Young as the person in the truck who sold him the drugs.  Smith and Honore also identified Young in a photographic lineup.[70]

As for the second deal, on February 25, 2000, Broderick Hogan agreed to set up another operation with Dwight Guyot as the target.  Dwight Guyot was Young's nephew.[71]  Hogan testified

[63]*Id.*, p. 76; St. Rec. Vol. 6 of 12, Trial Transcript (continued), Raymond Smith, p. 111, 11/14/01.

[64]*Id.*, pp. 77-78.

[65]St. Rec. Vol. 6 of 12, Trial Transcript (continued), Raymond Smith, p. 124-25, 11/14/01; St. Rec. Vol. 6 of 12, Trial Transcript, Detective Honore, p. 272, 11/14/01.

[66]*Id*, p. 128; St. Rec. Vol. 5 of 12, Trial Transcript, Agent Sewell, p. 91, 11/14/01.

[67]St. Rec. Vol. 6 of 12, Trial Transcript, Detective Honore, p. 273, 11/14/01.

[68]St. Rec. Vol. 6 of 12, Trial Transcript (continued), Raymond Smith, p. 129, 11/14/01.

[69]*Id.*

[70]*Id.*, p. 131-32; St. Rec. Vol. 6 of 12, Trial Transcript, Detective Honore, p. 287, 11/14/01.

[71]St. Rec. Vol. 7 of 12, Trial Transcript (continued), Broderick Hogan, pp. 25, 29, 11/15/01.

that Young delivered the drugs to Dwight Guyot's house for the sale.[72]  Several drug enforcement agents were parked outside and able to video tape the activities at Dwight Guyot's house.[73]

Based on the foregoing, the jury received evidence to establish that Young transferred the cocaine on both occasions.  The evidence reflected that Raymond Smith identified Young immediately after the 1999 transaction and later chose his picture from the photographic lineup. Young was also seen by Honore and Larry Smith at the sale that day.

At the second transaction in 2000, Young was identified by both Hogan and Leona Guyot, Dwight's wife, as the provider of the cocaine transferred to Hogan at the Guyot home.  These events were also captured on video and audio, which were published to the jury.

The fact that the jury chose to reject Young's alibi defense regarding the baseball game on July 21, 1999, does not negate the reasonableness of the verdict.  The jury was also within its province to find credible the testimony from Hogan, Leona Guyot and the enforcement officers over Young's assertions that he played no role in the February 25, 2000, transaction.  It is the jury's responsibility "to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson*, 443 U.S. at 319.  The reviewing court is not authorized to substitute its interpretation of the evidence for that of the factfinder.  *Alexander v. McCotter*, 775 F.2d 595, 598 (5th Cir. 1985).

A review of the record supports the jury's finding that Young was specifically identified by numerous witnesses as the person who transferred or distributed the cocaine in July 21, 1999, and

---

[72]*Id.*, at pp. 35, 38, 45, 51.

[73]St. Rec. Vol. 7 of 12, Trial Transcript (continued), Paul Tullier, pp. 186-87, 11/15/01; Trial Transcript (continued), James Howell, pp. 208-09, 210, 212, 11/15/01; Trial Transcript (continued), William Hart, pp. 229, 239, 11/15/01.

February 25, 2000.  There was sufficient evidence to support the verdict and no basis to grant the Motions for New Trial or for Post Verdict Judgement of Acquittal on that basis.  The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, federal law. Young is not entitled to relief on these claims.

### C.    Overruling of *Batson* Challenges (Claim No. Twelve)

Young alleges that the prosecution used its peremptory challenges to exclude African-Americans from the jury during voir dire and did so solely because of their race.  He contends that the state trial court erred in overruling counsel's *Batson* challenges without requiring the prosecution to provide appropriate race neutral reasons for using its peremptory challenges.

Young's counsel raised this claim on direct appeal.  The Court resolved that Young failed to establish a discriminatory basis for the use of the State's peremptory challenges under the test set forth in *Batson v. Kentucky*, 476 U.S. 79 (1986).  This was the last reasoned decision on this issue. *See Ylst*, 501 U.S. at 802.

The record reflects that Young's counsel requested that the State provide race neutral reasons for its peremptory challenges on three occasions during jury selection.  The state trial court overruled each challenge and found that the prosecutor properly had stated neutral reasons for using its peremptory challenges on each occasion.

The Louisiana Appellate Court relied on *Batson* and its progeny, which is the appropriate Supreme Court precedent to address a claim that a peremptory challenge may not be based on race. *See Moody v. Quarterman*, 476 F.3d 260, 266-67 (5th Cir. 2007).  The United States Supreme Court recently revisited the appropriate analysis to be used in addressing a *Batson* challenge:

> A defendant's *Batson* challenge to a peremptory strike requires a three-step inquiry. First, the trial court must determine whether the defendant has made a prima facie

showing that the prosecutor exercised a peremptory challenge on the basis of race. 476 U.S., at 96-97, 106 S.Ct. 1712. Second, if the showing is made, the burden shifts to the prosecutor to present a race-neutral explanation for striking the juror in question. *Id.*, at 97-98, 106 S.Ct. 1712. Although the prosecutor must present a comprehensible reason, "[t]he second step of this process does not demand an explanation that is persuasive, or even plausible"; so long as the reason is not inherently discriminatory, it suffices. *Purkett v. Elem*, 514 U.S. 765, 767-768, 115 S.Ct. 1769, 131 L. Ed.2d 834 (1995) (per curiam). Third, the court must then determine whether the defendant has carried his burden of proving purposeful discrimination. *Batson, supra*, at 98, 106 S.Ct. 1712; *Miller-El v. Dretke*, 545 U.S. [231, 251-52], 125 S.Ct. 2317, 2331-2332, 162 L. Ed.2d 196 (2005). This final step involves evaluating "the persuasiveness of the justification" proffered by the prosecutor, but "the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from, the opponent of the strike." *Purkett, supra*, at 768, 115 S.Ct. 1769.

*Rice v. Collins*, 546 U.S. 333, 338 (2006).

In determining whether purposeful discrimination has occurred, the court may consider a number of factors, including: (1) the percentage of African-American panelists who were challenged by the prosecutor with a peremptory strike; (2) comparison of the number of African-American panelists who were struck with the number of white panelists allowed to serve; (3) the prosecutor's use of procedural mechanisms to move African-Americans to the back of the panel, where they are less likely to be selected; (4) evidence of a contrast between questions posed to black and non-black panelists where such contrast indicates intent to load questions to make a case to exclude the African-American panelists; (5) evidence of a systematic policy or practice within the prosecutor's office of excluding minority jurors. *United States v. Nelson*, 450 F.3d 1201, 1207-08 (10th Cir. 2006) (citing *Miller-El v. Dretke*, 545 U.S. 231 (2005)).

A *Batson* issue is a question of fact. *Hernandez v. New York*, 500 U.S. 352, 364, 369 (1991). The state court' answer to "'the ultimate question of discriminatory intent represents a finding of fact of the sort accorded great deference on appeal,'" because such a finding largely turns on the

court's "evaluation of the prosecutor's credibility."  *United States v. Sneed*, 34 F.3d 1570, 1579 (10th Cir. 994) (quoting *Hernandez*, 500 U.S. at 364); *accord Rice*, 546 U.S. at 338-342; *Moody*, 476 F.3d at 267 (citing *Purkett*, 514 U.S. at 768).  "Thus we presume [the state] court's factual findings to be sound unless [petitioner] rebuts the 'presumption of correctness by clear and convincing evidence.' § 2254(e)(1)."  *Rice*, 546 U.S. at 338-39 (citing *Miller-El*, 545 U.S. at 240); *Moody*, 476 F.3d at 267.

The *Miller-El* Court also emphasized that, pursuant to § 2254(e), state court factual findings must be given the presumption of correctness unless the federal court finds that "the trial court's determination of the prosecutor's neutrality with respect to race was objectively unreasonable and has been rebutted by clear and convincing evidence to the contrary."  *Miller-El*, 537 U.S. at 341. In such a case, the federal habeas court's focus must be on the third step of the *Batson* test if the factual determination was unreasonable by clear and convincing evidence.  *Rice*, 546 U.S. at 342; *Moody*, 476 F.3d at 266.

In the instant case, the record does not clearly reflect the race of the potential jurors on the voir dire panel list, and none of the jurors were questioned about their race during voir dire.  The only indication that several of the panelists were African-American came during discussions of the *Batson* challenges made by counsel.[74]

The jury voir dire was conducted in three groups of 18 panelists.[75]  During the selection of the first panel, the State exercised only one peremptory challenge to exclude Rita Gauthreaux. During selection of the second panel, the State used six of its peremptory challenges.  One of those

---

[74]St. Rec. Vol. 5 of 12, Trial Transcript, pp. 263, 264, and 331, 11/13/01.

[75]St. Rec. Vol. 4 of 12, Trial Transcript, pp. 15, 153, 11/13/01; St. Rec. Vol. 5 of 12, Trial Transcript, p. 268, 11/13/01.

challenges was used to excuse Barbara Addison.[76]  Defense counsel requested that the State provide a race neutral reason for the challenge.  The State indicated that it decided not to accept any juror who in answer to its question rated the professionalism and trustworthiness of the police at a score less than eight.  Addison rated law enforcement at seven.[77]  The prosecutor further stated that he preferred to have jurors who had a higher regard for law enforcement.

The state trial court found that the defense had not proven a pattern of discrimination, and it further accepted the prosecutor's non-racial or neutral reason in support of the peremptory challenge to Ms. Addison.[78]  Defense counsel tried to argue to the Court that the State had also excluded African-Americans during voir dire in the two prior mistried instances.  Counsel conceded that he based this solely on his recollection.  The State instructed counsel to move on, tacitly rejecting that argument.

In that same panel, the State also used a peremptory challenge to exclude Lillie Gathige.[79]  Defense counsel again asked for a race neutral reason.  The State noted that Ms. Gathige rated the police at three, which fell below their acceptable level of rating.  Defense counsel objected to this as a race neutral reason.  The Court overruled the objection.[80]

In the third round, the State exercised four peremptory challenges.  One strike was used to backstrike Leah Farrell from the first panel.  During discussions with the Court, the State requested that the Court excuse Diane Pounds for cause or hardship based on her Saturday religious practices,

---

[76]St. Rec. Vol. 5 of 12, Trial Transcript, p. 261-264, 11/13/01.

[77]St. Rec. Vol. 5 of 12, Trial Transcript, p. 200, 11/13/01.

[78]*Id*., at 263.

[79]*Id*., at p. 265.

[80]*Id*., at p. 266.

and the Court denied the request noting that if the trial were to continue passed Friday, she would be replaced by an alternate.  When the Court reached her name during peremptory challenges, the State exercised one of its challenges to excuse her.  The defense objected and requested a race neutral reason.  The State responded that Pounds had a brother who was prosecuted in Nevada for dealing drugs, the same crime before the Court.[81]  Defense counsel replied that she rated police a nine.  The State responded that they had released other panelists with high ratings as well.[82]  Defense counsel objected and the Trial Court again overruled the objection because the State provided a race neutral reason.

In *Batson*, the Supreme Court set forth three basic considerations for a trial court to determine whether a defendant has met the first step, the prima facie showing, of the three-step procedure concerning the question of whether peremptory challenges have been used in an unconstitutionally discriminatory manner:

> The standards for assessing a prima facie case in the context of discriminatory selection of the venire have been fully articulated since *Swain [v. Alabama*, 380 U.S. 202, 205 (1965)].  *See Castaneda v. Partida*, *supra*, 430 U.S., at 494-495, 97 S. Ct., at 1280; *Washington v. Davis*, 426 U.S., at 241-242, 96 S. Ct., at 2048-2049; *Alexander v. Louisiana*, *supra*, 405 U.S., at 629-631, 92 S.Ct., at 1224-1226.  These principles support our conclusion that a defendant may establish a prima facie case of purposeful discrimination in selection of the petit jury solely on evidence concerning the prosecutor's exercise of peremptory challenges at the defendant's trial.  To establish such a case, the defendant first must show that he is a member of a cognizable racial group, *Castaneda v. Partida*, *supra*, 430 U.S., at 494, 97 S.Ct., at 1280, and that the prosecutor has exercised peremptory challenges to remove from the venire members of the defendant's race.  Second, the defendant is entitled to rely on the fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." *Avery v. Georgia*, 345 U.S., at 562, 73 S.Ct., at 892.

---

[81]*Id.*, at p. 331.

[82]The record reflects that the State excused seven people by peremptory challenge who rated the police at an eight or higher.

Finally, the defendant must show that these facts and any other relevant circumstances raise an inference that the prosecutor used that practice to exclude the veniremen from the petit jury on account of their race. This combination of factors in the empaneling of the petit jury, as in the selection of the venire, raises the necessary inference of purposeful discrimination.

*Batson*, 476 U.S. at 96-97; *Miller-El*, 545 U.S. at 240.

The record indicates that the petitioner, Young, is African-American and that the prosecution used peremptory challenges to exclude African-Americans from the jury. These factors confirm the first two parts of the prima facie showing. However, the state trial court determined that the circumstances of the case did not raise an inference that the prosecution used the peremptory challenges to exclude African-Americans because of their race. As will be discussed, the record does not contain any circumstance that would undermine this finding.

When addressing a *Batson* claim on habeas corpus review, unlike direct appellate review, the factual findings made by a state trial court during a *Batson* challenge are entitled to deference unless the petitioner demonstrates that the state trial court's findings of fact were "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2); *Miller-El*, 545 U.S. at 240. The decision in *Batson* also provides another layer of deference to the factual findings of the trial court in determining whether a defendant has made a prima facie showing:

> In deciding whether the defendant has made the requisite showing, the trial court should consider all relevant circumstances. For example, a "pattern" of strikes against black jurors included in the particular venire might give rise to an inference of discrimination. Similarly, the prosecutor's questions and statements during voir dire examination and in exercising his challenges may support or refute an inference of discriminatory purpose. These examples are merely illustrative. <u>We have confidence that trial judges, experienced in supervising voir dire, will be able to decide if the circumstances concerning the prosecutor's use of peremptory challenges creates a prima facie case of discrimination against black jurors.</u>

(emphasis added) *Batson*, 476 U.S. at 97.

In this case, the state trial court made an assessment of the circumstances and determined that the State had not used its peremptory challenges inappropriately. After each of Young's *Batson* challenges, the state trial court considered the non-racial reasons proffered by the State for excluding African-American jurors. The court was involved in and heard the questions asked by the prosecution and defense during voir dire, and none of them were deemed discriminatory.

Based on the circumstances of the case, the state trial court resolved that the peremptory challenges were race-neutral based on the State's representations, and not a pattern of discrimination. The record confirms that the State did in fact exclude all of the panelists who scored law enforcement below an eight.[83] As for the exclusion of Pounds, she did in fact attest that she had a brother prosecuted for drug dealing. She was not the only panelist who scored police above an eight to be excluded by the State's peremptory challenge.[84] The state trial court's conclusion was made after it had heard and considered the State's race-neutral reasons for the use of its peremptory challenges in the first round of voir dire, which the court found to be valid. Thereafter, the state trial court upon further consideration of the voir dire process made the finding that there was no showing of a pattern of discrimination.

The Court's review of the record supports the state trial court's findings that there was no pattern of discrimination. The record also reflects that the State did not question the voir dire panel or make statements in a manner that would suggest any inference of discriminatory purpose.

---

[83]These were panelists Addison, Gathige, Glover and Rester. Two other panelists Driskell and Wirtz rated police a seven. Driskell was not selected and Wirtz was seated as an alternate juror after both sides exhausted their challenges.

[84]The State also excluded panelists Gauthreaux, Ammerman, Valentine, Vicknair, and Farrell by peremptory challenge and each scored police a ten. Panelists Skritney and Feske were also excused by State's peremptory challenge and each scored police an eight.

Therefore, there actually was no basis to shift the burden to the State to present race neutral reasons for the use of the peremptory challenges. *Soria v. Johnson*, 207 F.3d 232, 238-39 (5th Cir. 2000); *Thompson v. Cain*, 161 F.3d 802 (5th Cir. 1998).

Nevertheless, the Trial Court allowed the State to put forth its race-neutral reasons for exercising each of its peremptory challenges subject to defense objection. Each of those reasons was found to be race-neutral and this Court agrees. The record supports the logical reasons posed by the State at each instance. Young has not offered to this court any evidence, much less clear and convincing evidence, to establish that the findings by the state trial court were unreasonable, or not supported by the record, in such a manner as to overcome the presumption of correctness under the AEDPA.[85] *Miller-El*, 537 U.S. at 240, 251-52.

For the foregoing reasons, the state courts' denial of relief on this claim was not contrary to or an unreasonable application of *Batson*. Young is not entitled to relief on this claim.

### D.        Admission of Hearsay Evidence in the form of Audiotapes (Claim No. Thirteen)

Young complains that the Court allowed the jury to hear unauthenticated hearsay evidence when it admitted the audiotapes of a conversation between Dwight Guyot and Broderick Hogan in connection with the February 25, 2000, drug deal. He claims that the evidence was not appropriately admitted, because it did not meet an exception to Louisiana's hearsay rule and could not be used against him at trial.

He first raised this claim to the Louisiana First Circuit on appeal. The Court denied relief finding that the evidence was properly admitted under La. Code of Ev. art. 801(D)(3)(b) as evidence of Young's role in the conspiracy to sell the cocaine he provided to Dwight Guyot for sale to Hogan.

---

[85]As noted above, this presumption differs from the more stringent clearly erroneous standard occasioned on direct review of a *Batson* challenge like that addressed in cases like *United States v. Huey*, 76 F.3d 638 (5th Cir. 1996).

The evidence of the joint effort to sell drugs to Hogan was bolstered by the testimony of Dwight Guyot's wife.  Young did not present evidence that he withdrew from the conspiracy.  The Court resolved, therefore, that the evidence was not hearsay.  This was the last reasoned decision on this issue.  *See Ylst*, 501 U.S. at 802.

Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law.  *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992).  States are free to implement procedures regarding the admission of evidence, provided that those procedures do not infringe on a constitutional guarantee.  *Burgett v. State of Texas*, 389 U.S. 109 (1967).  Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair.  *Lisenba v. People of the State of California*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (habeas review is proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

To obtain relief, the petitioner must show that the state trial court's error, if any, had a "substantial and injurious effect or influence in determining the jury's verdict."  *Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993).  The petitioner must show that "there is more than a mere reasonable possibility that [the error] contributed to the verdict.  It must have had a substantial effect or influence in determining the verdict."  *Woods v. Johnson*, 75 F.3d 1017, 1026 (5th Cir.1996) (emphasis omitted).  In determining harm based on inadmissible testimony, the court should consider: (1) the importance of the witness's testimony; (2) whether the testimony was cumulative,

corroborated, or contradicted; and (3) the overall strength of the prosecution's case. *Sherman v. Scott*, 62 F.3d 136, 142 n.6 (5th Cir. 1995).

In this case, Young has made no showing that the evidence was inadmissible, much less that its admission violated due process. Under Louisiana law, hearsay is defined by La. Code Evid. art. 801(C) as "a statement, other than one made by the declarant while testifying at the present trial or hearing, offered in evidence to prove the truth of the matter asserted." Hearsay is generally inadmissible at trial. La. Code Evid. art. 802. However, La. Code Evid. arts. 803 and 804 provide many exceptions to the hearsay rule.

Pursuant to La. Code Ev. art. 803(D)(3)(6), evidence is not inadmissible hearsay if it is a statement made by a co-conspirator in the commission of a crime, provided that the State offers prima facie evidence of the conspiracy. In this case, as noted by the state court, the audio recordings were admitted at trial in connection with the testimony establishing that Young arranged with Dwight Guyot to provide the drugs for sale to Hogan. This came from Guyot's wife, who saw Young toss the bag containing the cocaine to Dwight Guyot to sell to Hogan. She also saw her husband hand the money from Hogan to Young. The testimony also established that Hogan and the police officer witnessed the exchange of the bag containing the cocaine. As a result, the State provided ample evidence that Young and Dwight Guyot acted jointly to provide the cocaine to Hogan. The audiotapes were not hearsay under Louisiana law and were admissible at trial.

Because Young has not established that inadmissible hearsay was presented at his trial, he has failed to establish a violation of his due process rights arising out of the admission of the audiotapes. To the extent he may suggest a violation of the confrontation clause, he has not established that the non-testimonial recorded statements invoked any protections under the

confrontation clause. *See Laurent v. Tanner*, No. 10-1175, 2010 WL 5141871 at *18-20 (E.D. La. Nov. 4, 2010) (Report and Recommendation) (citing *Davis v. Washington*, 547 U.S. 813, 821 (2006).

For this reason, the state court's denial of relief on this issue was neither contrary to, nor an unreasonable application of, federal law.  Young is not entitled to relief on this claim.

### E.   Violation of the Right to a Jury Trial (Claim No. Fifteen)

Young argues that the Trial Court erred in conducting his trial before a jury different from the one selected on August 27, and 28, 2001.  He argues that the prior trial had commenced before the Trial Court decided to continue the trial so that it could conduct a *Prieur* hearing regarding admissibility of certain other crimes evidence.  He further argues that the empaneling of another jury and the trial violated his rights against double jeopardy.

Young's counsel first raised this claim on direct appeal.  The Louisiana First Circuit denied relief finding that the jury chosen in August of 2001 was not sworn as a group as required by La. Code Crim. P. art. 790 in order for the trial to have commenced and jeopardy to have attached.  This was the last reasoned decision on this issue.  *See Ylst*, 501 U.S. at 802.

Although Young uses the phrase denial of the right to a jury, his claim actually seeks relief from double jeopardy, as having been tried before two juries on the same offense.  The Double Jeopardy Clause provides three related protections: "It protects against a second prosecution for the same offense after acquittal.  It protects against a second prosecution for the same offense after conviction.  And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969).  The protection of the Double Jeopardy Clause is afforded only when the accused has actually been twice placed in jeopardy. "[J]eopardy attaches when a jury is

43

empaneled and sworn, or in a bench trial, when the judge begins to receive evidence." *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 579 (1977) (citations omitted).  The applicable threshold was never reached in August of 2001.

As outlined in the procedural history, Young's case was first called before a jury for trial on April 17 and 18, 2001.[86]  After the State encountered evidence problems, the Trial Court granted a mistrial.[87]  The Trial Court recalled the matter for jury trial on August 27, 2001.[88]  The next day, after the jury had been selected but <u>not</u> sworn, the Trial Court determined that it needed to conduct the *Prieur* hearing on the admissibility of the other crimes evidence before proceeding to trial.[89]  The Trial Court then dismissed and released the jury and proceeded with its motion to suppress hearing.[90] The Court concluded its ruling on the Motion to Suppress on November 13, 2001.  It then began jury selection to proceed with trial.[91]

The jury panelists selected on August 27, and 28, 2001, were never sworn as a jury to preside over Young's case.  Young, therefore, was never put to trial before the trier of fact at that time as

---

[86]St. Rec. Vol. 1 of 12, Trial Minutes, 4/17/01; Trial Minutes, 4/18/01; Trial Transcript, 4/17/01; St. Rec. Vol. 2 of 12, Trial Transcript (continued), 11/17/01; Trial Transcript, 11/18/01.

[87]St. Rec. Vol. 1 of 12, Trial Minutes, 4/18/01; St. Rec. Vol. 2 of 12, Trial Transcript, 11/18/01.

[88]St. Rec. Vol. 1 of 12, Trial Minutes, 8/27/01; St. Rec. Vol. 2 of 12, Trial Transcript, 8/27/01; St. Rec. Vol. 3 of 4, Trial Transcript (continued), 8/27/01.

[89]St. Rec. Vol. 1 of 12, Trial Minutes, 8/28/01; St. Rec. Vol. 3 of 12, Trial Transcript, 8/28/01; St. Rec. Vol. 4 of 12, Trial Transcript (continued), 8/28/01.

[90]*Id.*; St. Rec. Vol. 3 of 12, Trial Transcript, 8/28/01; St. Rec. Vol. 4 of 12, Trial Transcript (continued), 8/28/01.

[91]St. Rec. Vol. 1 of 12, Trial Minutes, 11/13/01; St. Rec. Vol. 4 of 12, Trial Transcript, 11/13/01; St. Rec. Vol. 1 of 12, Trial Minutes, 11/14/01; Trial Minutes, 11/15/01; Trial Minutes, 11/16/01; Trial Minutes, 11/17/01; St. Rec. Vol. 4 of 12, Trial Transcript, 11/13/01; St. Rec. Vol. 5 of 12, Trial Transcript (continued), 11/13/01; St. Rec. Vol. 5 of 12, Trial Transcript, 11/14/01; St. Rec. Vol. 6 of 12, Trial Transcript (continued), 11/14/01; St. Rec. Vol. 6 of 12, Trial Transcript, 11/15/01; St. Rec. Vol. 7 of 12, Trial Transcript (continued), 11/15/01; St. Rec. Vol. 8 of 12, Trial Transcript (continued), 11/15/01; St. Rec. Vol. 8 of 12, Trial Transcript, 11/16/01; St. Rec. Vol. 9 of 12, Trial Transcript (continued), 11/16/01; St. Rec. Vol. 9 of 12, Trial Transcript, 11/17/01.

required for jeopardy to have attached.  *See United States v. Martin Linen Supply Co.*, 430 U.S. at 579.  Accordingly, his subsequent prosecution and conviction in November of 2001, did not violate the Double Jeopardy Clause.

The state courts' denial of relief on this claim was not contrary to or an unreasonable application of Supreme Court precedent.  Young is not entitled to relief on this claim.

**VIII.   Recommendation**

It is therefore **RECOMMENDED** that Young's petition for issuance of a Writ of Habeas Corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[92]

New Orleans, Louisiana, this 13th day of January, 2011.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[92]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.